IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MILLICENT MCCAIN,                           : Civil No. 1:25-CV-1679
                                            :
   Plaintiff,                              :
                                            :
      v.                                  :
                                            : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,                            :
Commissioner of Social Security,            :
                                            :
   Defendant.                              :

## MEMORANDUM OPINION

### I.   Introduction

Millicent McCain filed an application under Title II of the Social Security Act for disability benefits on September 30, 2022. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that McCain was not disabled from her alleged onset of disability, June 30, 2021, through the date of the ALJ's decision, November 13, 2024.[1]

McCain now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, we agree and conclude that the ALJ's decision is not supported by

---

[1] Tr. 16-39.

substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II.   Statement of Facts and of the Case[2]

Millicent McCain filed for disability benefits, alleging disability due to type 2 diabetes, poor circulation, a ventral hernia, IVC filter, diabetic retinopathy, pulmonary embolism, arthritis, anxiety, depression, herniated disc, hernia, anemia, blood clots, hypertension, left and right shoulder impairments, thyroid condition, peripheral vascular disease, and loss of vision in her left eye.[3] McCain was 59 years old at the time of her alleged onset of disability and had past relevant work as a court clerk.[4]

An ALJ held a hearing on McCain's disability application on July 15, 2024.[5] McCain and a Vocational Expert ("VE") both appeared and

---

[2] Because we are remanding this matter based on the ALJ's failure to properly articulate his evaluation of the medical opinion evidence, we forego a recitation of the plaintiff's medical records, which span roughly 2,000 pages.

[3] Tr. 75.

[4] Tr. 31-32, 75.

[5] Tr. 40-73.

testified at this hearing.[6]  Following this hearing, on November 13, 2024, the ALJ issued a decision denying McCain's application for disability benefits.[7]  The ALJ first concluded that McCain had not engaged in substantial gainful activity since her alleged onset of disability, June 30, 2021.[8] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that McCain suffered from the following severe impairments: non-proliferative retinopathy, blindness of the left eye, strabismic amblyopia in the left eye, age-related nuclear cataracts in both eyes, osteoarthritis of the bilateral knees status post bilateral knee replacements, herniated disc of the lumbar spine, diabetes mellitus, diabetic neuropathy, thyroid nodules, goiter, hypertension, coronary artery disease, asthma, obesity status post gastric bypass surgery, ventral hernia, chronic pain syndrome, and venous and arterial insufficiency of the lower extremities.[9]  At Step 3, the ALJ concluded that

---

[6] *Id.*

[7] Tr. 16-39.

[8] Tr. 21.

[9] Tr. 22.

3

none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[10]

Between Steps 3 and 4, the ALJ then concluded that McCain:

[H]a[d] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could occasionally climb ramps and stairs, but could never climb ladders, ropes or scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl. She cannot perform tasks that require the use of both eyes, nor tasks that require the use of the left eye. She must avoid work involving potentially heightened risk of eye injury, such as welding, grinding, cutting, and sawing. She must be afforded the ability to wear eye protection to protect the vision on the better eye.[11]

In reaching this residual functional capacity ("RFC") determination, the ALJ considered the objective medical record, the medical opinion evidence, and McCain's reported symptoms. With respect to the medical opinion evidence, the ALJ considered a total of eight medical opinions regarding McCain's physical impairments and found all of these opinions unpersuasive.[12] The ALJ considered the opinions of the state agency consultants, who found that McCain could

---

[10] Tr. 23-27.

[11] Tr. 27.

[12] Tr. 30-31.

perform a range of light work.[13]  The ALJ found these opinions unpersuasive, reasoning that the opinions were not supported by the medical records or McCain's history of treatment, which the ALJ found supported a limitation to sedentary work.[14]  He also noted that these opinions were inconsistent with the opinions of McCain's treating providers, who alleged greater limitations.[15]

However, when considering the opinions of McCain's treating doctors, the ALJ found all of these opinions unpersuasive.[16]  The ALJ merely reasoned that the opinions of Dr. Attalah, Dr. Weiser, Dr. Cohen, and Dr. Movshovich were "not supported by the treating record[,]" and were further "not consistent with the level of treatment and reported activities of daily living."[17]  The ALJ also considered the opinion of the consultative examiner, Dr. Konecke, and found this opinion not persuasive.[18]  Regarding this opinion, which contained greater

---

[13] Tr. 30, 81-84, 90-94.
[14] Tr. 30.
[15] *Id.*
[16] Tr. 30-31.
[17] Tr. 31.
[18] Tr. 30-31.

limitations as to McCain's sitting, standing, and walking abilities as well as postural movements, the ALJ merely reasoned that the opinion "was not supported by the exam findings at the consultative exam.  The exam findings are relatively normal and do not support these limitations."[19] Additionally, the ALJ found that all of the opinions were not consistent with McCain's reported activities of daily living but never discussed what those reported activities were or how they were in contrast to the medical opinions.[20]

The ALJ also found McCain's testimony to be inconsistent with the objective clinical findings.[21]    McCain testified regarding her poor eyesight, an inability to lift more than 10 pounds, her need to use a cane while walking and to elevate her legs throughout the day due to swelling, and her neuropathy from her diabetes.[22]  She reported an ability to do some household chores but slowly.[23]  The ALJ found that McCain was not

---

[19] Tr. 31.
[20] Tr. 30-31.
[21] Tr. 28-30.
[22] Tr. 50-60.
[23] Tr. 54, 61.

6

as limited as she alleged, reasoning that the treatment records demonstrated relatively unremarkable examination findings.[24]

Having made these findings, the ALJ found at Step 4 that McCain could perform her past relevant work as a court clerk.[25] The ALJ relied on the VE testimony to classify McCain's past work as a court clerk, noting that McCain performed the job at a light exertional level, but that the job was generally performed at the sedentary exertional level.[26] Accordingly, the ALJ found that McCain had not met the stringent standard prescribed for disability benefits and denied her claim.[27]

This appeal followed.[28] On appeal, McCain argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly classify her past work, analyze the medical opinion evidence, and consider her subjective symptoms.[29] This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we agree

---

[24] Tr. 28-30.
[25] Tr. 31-32.
[26] Tr. 31-32, 65.
[27] Tr. 32.
[28] Doc. 1.
[29] Doc. 11.

7

that the ALJ's consideration of the medical opinions is not supported by substantial evidence.  Therefore, we will remand this matter to the Commissioner for further consideration.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[30]  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31]   Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[32]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing

---

[30] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[31] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[32] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

evidence."[33]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[34]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[35]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[36]  Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[37]  Thus, the

---

[33] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[34] Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

[35] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

[36] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[37] Id.

question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[38]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[39] Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[40] This does not require the ALJ

---

[38] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at \*1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[39] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[40] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[41]   Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[42]

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[43] This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national

---

[41] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[42] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

[43] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

economy."[44]   To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[45]

In making this determination, the ALJ follows a five-step evaluation.[46]   The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[47]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her

---

[44]  42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[45] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[46] 20 C.F.R. §§404.1520(a), 416.920(a).
[47]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

impairment(s)."[48]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[49]  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[50]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[51]  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[52]

---

[48] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[49] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[50] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[51] *Mason*, 994 F.2d at 1064.

[52] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[53]  Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[54]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.  Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected

---

[53] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also* *Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[54] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

14

the medical opinion based upon an assessment of other evidence.[55] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[56] Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[57]

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[58] Supportability and consistency are the

---

[55] *Biller*, 962 F. Supp. 2d at 778–79.
[56] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.
[57] *Burns,* 312 F.3d 113.
[58] 20 C.F.R. § 404.1520c(c).

two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[59]  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[60]  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[61]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[62]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[63]  Further, the ALJ can credit parts of an opinion without giving

---

[59] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

[60] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[61] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[62] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[63] *Mason*, 994 F.2d at 1066.

credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[64]    On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[65]

## D. This Case will be Remanded.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests,"[66] and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."[67]   After consideration, we conclude that the ALJ's discussion of the medical opinion evidence is not supported by an adequate explanation.

As we have explained, the ALJ considered various opinions regarding McCain's physical impairments and found all of these opinions

---

[64] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).
[65] *Cummings*, 129 F. Supp. 3d at 214–15.
[66] *Cotter*, 642 F.2d at 704.
[67] *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

unpersuasive. With respect to the state agency consulting opinions that found McCain could perform a range of light work, the ALJ appeared to discount these opinions, in part, on the basis that the plaintiff's treating providers alleged greater limitations.[68] But the ALJ then discounted those greater limitations from the treating providers, reasoning only that the limitations were not supported by or consistent with the medical records and the plaintiff's activities of daily living, which the ALJ found supported a limitation to sedentary work.[69] The ALJ also reasoned that these opinions were inconsistent with McCain's level of treatment.

In determining that these opinions were unpersuasive, the ALJ provided no detail from which we can trace his reasoning. Instead, the ALJ resorted to boilerplate language that these opinions were not consistent with the medical record and with the plaintiff's activities of daily living. Further, while the ALJ found these opinions to be inconsistent with McCain's level of treatment, he failed to explain such a finding, particularly given that the providers themselves opined that

---

[68] Tr. 30.
[69] Tr. 31.

McCain's treatment was appropriate for her conditions.[70]  Further, while the ALJ made generalized references to the medical record, he failed to explain why or how the referenced evidence caused him to discount the medical opinions.  The ALJ may have relied on other evidence to properly exclude these limitations, but the decision does not adequately articulate such reliance.  Although the Commissioner attempts to explain the ALJ's connection between the medical evidence and his consideration of the opinion evidence in his brief, it is well settled that " '[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision;' the Commissioner may not offer a post-hoc rationalization."[71]

Additionally, the ALJ appeared to rely on the plaintiff's activities of daily living to support his determination that these opinions were not persuasive.  But the ALJ failed to discuss the plaintiff's activities of daily living in the decision.  In fact, the only discussion of the plaintiff's activities appears to be from the plaintiff's testimony, in which she reported she does not do yardwork, could not lift more than 10 pounds,

---

[70] *See* Tr. 875, 883, 906, 1243.

[71] *Clinkscales o/b/o T.S. v. Colvin*, 232 F. Supp. 3d 725, 736 (E.D. Pa. 2017) (citations omitted).

19

struggled with performing self-care activities, and was often lethargic.[72] Accordingly, to the extent the ALJ relied on the plaintiff's activities of daily living to conclude that the opinions were not persuasive, such reliance is not supported by substantial evidence where the ALJ failed to discuss those activities at all, let alone explain how the plaintiff's activities were inconsistent with her providers' limitations.

Accordingly, a remand is required for further consideration of these issues.[73]  While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter.  Rather, that task is left to the ALJ on remand.

---

[72] Tr. 28.

[73] Because we are remanding the case on this specific issue, we decline to reach the plaintiff's remaining arguments.

20

## IV.    <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner will be

REMANDED for further consideration.

An appropriate order follows.

Submitted this 15th day of June 2026.

<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge
